UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN F. KESKINEN,

       Plaintiff                             CIVIL ACTION NO. 08-10538

       v.                                   DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF                 MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's application for social security benefits, both supplemental security income (SSI) and disability insurance benefits under Title II (DIB).  Plaintiff alleged that he became disabled on January 1, 2003, due to "mental illness/anxiety disorder/depression/suicidal."  (Tr. 49, 80)  The defendant found that plaintiff had severe impairments of depression, anxiety disorder, and possible learning disability.  The defendant found that plaintiff retained the residual functional capacity to perform semi-skilled work at all exertional levels, which included his past relevant semi-skilled work as a landscaper.  Thus, the defendant found that plaintiff was not entitled to benefits.  Plaintiff contends that this finding is not supported by substantial evidence.  Defendant contends otherwise.  For the reasons discussed in this Report, the court finds that defendant's findings are not supported by substantial evidence.  Thus, it is recommended that the defendant's motion for

-1-

summary judgment be denied, that of the plaintiff be granted in part, and the case be remanded under sentence four for further proceedings before the agency.

At the time of the ALJ's decision, plaintiff was 37 years old. He graduated from high school with both regular but principally special education classes. He had past relevant work as a landscaper. Plaintiff reported to a social security worker that he lifted trees, bark, and pavers and lifted frequently 25 pounds and occasionally up to 100 pounds. (Tr. 74, 82) The ALJ found that plaintiff had a high school education and the residual functional capacity to perform semi-skilled work at all exertional levels.

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a

medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy.  Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Plaintiff submits that his mental impairments prevent the performance of work in a competitive setting.  Plaintiff has been diagnosed with bi-polar disorder and depression/anxiety as well as developmental learning disorder with impairments in concentration, memory, and judgment and low I.Q. (full scale 65 to 72).  The medical records show that plaintiff was also treated for anxiety and depression in December 2002 by Dr. Stern.  Plaintiff received medication for problems surrounding his divorce and his ex-wife.  (Tr. 107)

A Mental Residual Functional Capacity Assessment was completed for the defendant in May 2005 by Dr. Rom Kriauciunas, Ph.D.  (Tr. 89)  Plaintiff was found to have the residual mental capacity for unskilled work.  He was "Not Significantly Limited" in the areas of ability to remember location and work procedures, remember and carry out short and simple instructions, perform activities within a schedule, maintain attendance, and be punctual, sustain an ordinary routine without special supervision, work in coordination with others, and make simple work-related decisions.  Plaintiff was moderately limited in his ability to remember and carry out detailed instructions and maintain attention and concentration for extended periods.  (Tr. 87)

Plaintiff was not significantly limited in the ability to complete a normal work week, ask simple questions, accept instructions, respond to supervisors, get along with coworkers, maintain socially appropriate behavior, be aware of normal hazards, travel in unfamiliar places and use public transportation, and set realistic goals and make plans independently of others.  Plaintiff had moderate limitations in his ability to interact appropriately with the public and respond to changes in the work setting.  (Tr. 88)

In a DDS consultation form, Dr. Rom Kriauciunas noted that plaintiff had depression and anxiety but would be able to do unskilled work.  Dr. Kriauciunas noted that plaintiff had a developmental learning disorder.  (Tr. 93) He also had bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, and currently characterized by one or both.  (Tr. 95)  His full scale IQ tested at 72, verbal 76, and performance 70.  (Tr. 91)

Dr. Paul Kaye evaluated plaintiff between December 21, 2004, and January 26, 2005.  Dr. Kaye noted low test scores, long standing depression by history, and poor insight.  He diagnosed bi-polar disorder with anxious and obsessional features, learning disorders, and polysubstance abuse in remission.  Weekly psychotherapy sessions were recommended.  (Tr. 111-115) According to the evaluation, plaintiff was born in Detroit and at age 8 moved to Novi.  He is the youngest of 7 children and came from an intact family.  His father owned a logging company in the UP and was never home.  His mother worked at Sears; she is 74 and still working there.  (Tr. 111)  Plaintiff reported difficulties during his childhood years with sleeping, frequent nightmares, and phobic reactions to heights as well as depression following his

brother's suicide.  The brother, who had been a primary care giver, was 26 and plaintiff was ten. During adolescence, plaintiff rebelled by drinking and smoking.  He attended special education classes throughout high school.  After high school, he went to Oakland Technological Center for two years and received certification as a machine builder.  He dropped out of Schoolcraft College after two semesters.  He did part time work for Ford Motor Company and then worked for K&D for five years.  He married and stayed together with his wife for six years.  She had an affair, he was working 80 hours a week.  He has one child.  His divorce was final in 2002.  He has weekend visitation with his daughter.  He reports current symptoms as difficulty sleeping, phobic reactions to heights, frequent panic attacks and depression.  He has not been psychiatrically hospitalized. On an emotional level, his history suggested long standing depression from age 10.

Intellectually, he functions within the borderline range of intelligence.  The scores reflect the presence of multiple developmental learning disorders in basic areas of reading, spelling, and math. (Tr. 113)  Achievement and aptitude testing reveal cognitive deficits in all academic areas. The profile is suggestive of a slow learner.  He reads at a level of the beginning of sixth grade, spells at beginning of fifth grade, and arithmetic is at the 3rd grade level. (Tr. 113)  His verbal scale was mid to low dull normal level but otherwise was within the borderline range.  On the performance tasks calling for psychomotor speed and eye-hand coordination, his score fell within the mentally defective range.  The examiner noted that plaintiff was interested in doing landscaping work and lawn maintenance, and could do newspaper delivery, parking lot attendant, and janitorial services.  (Tr. 111-115)

Dr. Sack is plaintiff's treating physician. A family practice physician who also practices psychiatry, Dr. Sack reported in July 22, 2005, that plaintiff was disabled from work while his medications were being adjusted. Dr. Sack completed multiple assessments of plaintiff and in 2006 said that plaintiff had poor to no ability to follow work rules, relate to coworkers, interact with supervisors, deal with work stress, function independently, maintain concentration, or otherwise behave appropriately in the workplace. (Tr. 161-162) In November, 2006, Dr. Sack diagnosed emotional disorder, possibly bi-polar. Symptoms were reported as irritability, decreased sleep, racing thoughts, spending sprees, depression, and anxiety. (Tr. 163) Plaintiff in 2007 was reported by Dr. Sack to be taking Seoquel, Effexor, and Klonopin. (Tr. 189)

Plaintiff was evaluated by Dr. Samuel Goldstein in October 2007. In that testing, plaintiff had a full scale IQ of only 65, a GAF of between 47 to 50, with cognitive disorder, bipolar disorder, and alcohol dependence in remission. (Tr. 178-185)

At the hearing, Dr. Raymond Dulecki testified as the vocational expert. He identified plaintiff's past work as a landscaper as heavy and semi-skilled. He has no transferable skills. If plaintiff's allegations of impaired concentration, judgment, and memory were accepted, then plaintiff could not do any work on a sustained basis. If plaintiff could drive without restriction, the VE initially opined that plaintiff could work. However, on cross examination, the VE conceded that even moderate limitations in concentration, memory and judgment would be work preclusive, notwithstanding the ability to drive a car for a limited period. (Tr. 216)

**Analysis**

The defendant's determination that plaintiff has depression and anxiety disorder is supported by substantial evidence. The determination that plaintiff has possible learning disability is not supported by substantial evidence. Plaintiff clearly has a cognitive impairment and has been diagnosed with bipolar disorder. The defendant's finding that with respect to the learning disorder as merely "possible" and the lack of finding of bipolar disorder disregards medical examiners and treating physicians who have all noted both serious mental health issues (bipolar disorder) as well as low IQ with intellectual functioning in the dull normal to mentally retarded area, and borderline intellectual functioning overall. Plaintiff's depression, anxiety, and medications all impact his ability to maintain concentration and attention. His intellectual functioning is at the borderline level or less and is complicated by the other mental impairments. Plaintiff is shown not to be able to perform simple reading, arithmetic, other academic tasks. The defendant's assumption in the hypothetical that plaintiff could drive on an unrestricted basis is not supported by the record. Plaintiff suffers from panic attacks which cause him to pull over to the side of the road if he is driving. Even the defendant's reviewer opined that plaintiff was limited to performing unskilled work.

The landscape work that plaintiff performed was found by the defendant to be semi-skilled with no transferable skills. Plaintiff could perform the exertional requirements of the work, but the defendant's determination that plaintiff could perform the mental functions of the job is not supported by substantial evidence. The hypothetical indicated that if plaintiff's situation were as he had described it, given his age, education, and work experience, he would be

unable to work. (Tr. 211) Plaintiff's difficulties with concentration and judgment and memory, and frequent panic attacks, would render him unable to be employed on a sustained basis in competitive employment. The VE testified that if plaintiff's situation were as he testified, his driving ought to be severely restricted or eliminated. (Tr. 212) Plaintiff is on a variety of medications for psychiatric impairments, all of which impact his already limited judgment due to limited intellectual ability. Other courts which have considered bipolar disorder, anxiety and depression combined with a low IQ in disability cases have determined that substantial evidence failed to support the defendant's determination. See, Wilson v. Astrue, 493 F.3d 965 (8th Cir. 2007). Like plaintiff, Ms. Wilson experienced panic attacks and her GAF was in the 40s. Her full scale IQ was 78 and she had diagnoses of major depression, anxiety, and bipolar disorder. Id. at 967. That court not only remanded, but found that she was entitled to an award of benefits.

     Defendant's finding that plaintiff has a high school education also does not appear to be supported by substantial evidence. The classes were essentially special education. While plaintiff holds a certification from a community college, this needs to be reviewed more carefully. Plaintiff's full scale IQ has been tested at 65 and at 72. This would appear to be inconsistent with a determination that plaintiff can function as a fully educated high school graduate. In addition, it may be that plaintiff's mental impairments plus his low IQ are sufficient to meet the listings. To meet Listing 12.05 (C), plaintiff needs a valid IQ of 60 to 70 plus an additional physical or mental impairment imposing an additional and significant work-related limitation of function.

Thus, the case should be remanded to the Commissioner for further proceedings. Such proceedings would include testimony from a medical professional familiar with both the intellectual/cognitive issues and the psychiatric overlay and any re-testing if necessary. Even if it is determined that plaintiff does not meet the Listings and could perform competitive employment, such employment would be, based on the functional residual capacity determined by defendant's reviewer, unskilled work. Thus, plaintiff's past relevant semiskilled landscaper job would be precluded. The burden would then shift to the Commissioner at this next step to determine whether any jobs exist which plaintiff could perform. Therefore, additional proceedings would need to include such testimony and determination of plaintiff's functional capacity.

As plaintiff notes, an award of benefits is proper when all essential factual issues have been resolved and record adequately establishes a plaintiff's entitlement to benefits. Newkirk v. Shalala, 25 F.3d 316, 318 (6th Cir. 1994). In the instant matter, it cannot be determined whether plaintiff would be able to perform competitive employment and if so, whether there exist a significant number of jobs that he could perform.

Accordingly, it is recommended that the defendant's motion for summary judgment be denied, that of the plaintiff be granted in part, and the matter be remanded to the Commissioner for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                                    s/Virginia M. Morgan
                                                    Virginia M. Morgan
                                                    United States Magistrate Judge

Dated: January 14, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 14, 2009.

                                                      s/Jane Johnson
                                                     Case Manager to
                                                     Magistrate Judge Virginia M. Morgan